In a proceeding to review an order of the New York City Commission on Human Rights, dated February 15, 1968, in which the Commission cross-petitioned for enforcement of the order (Administrative Code of City of New York, § Bl-9.0; CP'LR article 78), petitioners appeal from an order of the Supreme Court, Queens County, dated July 15, 1968, which modified said order of the commission and directed enforcement of the order as modified. Order modified, on the law and in the exercise of discretion, by (1) striking out the fourth ordering paragraph which reduced from $600 to $200 ■the compensation directed to be paid by appellants to the complainant and (2) amending the first ordering paragraph so as to annul the commission’s direction that compensation be paid, instead of modifying it by the reduction. As so modified, order affirmed, without costs. In our opinion, the direction that appellants pay money damages to the complainant was unwarranted under the facts of this ease. Brennan, Rabin and Hopkins, JJ., concur; Christ, Acting P. J. and Munder, J., dissent and vote to reverse the order and to annul the commission’s order, with the following memorandum: After a hearing, the respondent commission found appellants guilty of having discriminated against the complainant, a Negr.o, in violation of section Bl-7.0, (subd. 5, par. [a]) of the Administrative Code of the City of New York, in the rental of an apartment. Its order was confirmed by Special Term with minor modifications. The pertinent facts are as follows: On July 20, 1967, the complainant and Ms ■wife went to appellants’ renting office to make application for an apartment (5K) at 162-05 89th Avenue, Jamaica, New York, which the complainant had seen the previous day. The apartment rented for $159 per month. According to the complainant, appellant Hiltzik asked him about his job and salary. He replied that he worked at Shea Stadium and averaged $150 per week, mainly on commissions. Hiltzik then told him that the apartment had just been rented to the woman who had been sitting outside his office when they arrived (a Mrs. Schmidt). The complainant also alleged that Hiltzik made some racial slurs about Negroes. Hiltzik .testified that he informed the complainant that *973 the apartment had been rented before he took certain financial information from the complainant for use in the event another apartment would become available; and that the complainant was very indefinite about finances and indicated he held two jobs. Hiltzik denied making any racial remarks. At noon on July 24,1967, Mrs. Jacobson, a white volunteer worker with Operation Open City of the New York Urban League, visited the subject premises. She was shown apartment 5K by the superintendent and was told that it was available. The following day, July 25, she went .to appellants’ office and told the receptionist she was there about apartment 5K. Mrs. Jacobson spoke to Hiltzik over the telephone, giving him her name, her husband’s occupation (furniture salesman) and the number of people who would live in the apartment. She claims she was not asked about her husband’s income. Thereafter, the receptionist typed up a lease and Mrs. Jacobson took it home, leaving a deposit. Appellant Hiltzik claimed that apartment 5K was rented on July 20, 1967 to Mrs. Schmidt, who was waiting in the office when the complainant arrived. However, in the late afternoon of July 24 she called him on the phone and canceled the lease. On July 27, Hiltzik called the superintendent and told him the apartment was available again. After the Schmidt cancellation and on July 25, he called his office and was told a Mrs. Jacobson wanted the apartment. He spoke to her over the phone and ascertained that her husband had worked for a furniture company for the past 20 years, that he earned $200 per week and that Mrs. Jacobson had a grown son who would take the apartment with her. Hiltzik thought she sounded all right and had the girl in the office write up a lease for her. Hilzik also stated that it was his policy not to accept as a tenant any one whose weekly salary from one job was not equivalent to the monthly rental; and he does not accept any one who works at more than one job. Section Bl-9.0 of the Administrative Code provides that the commission’s findings “as to the facts shall be conclusive if supported by sufficient evidence on the record considered as a whole.” To support a finding upon which legal rights and obligations are based, there must be “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion” (Edison Co. v. Labor Board, 305 U. S. 197, 229). A thorough review of the entire record reveals that there is not sufficient evidence to support the factual findings and conclusions of the commission. There are several aspects of the evidence which we consider to weigh heavily against a finding that the complainant was refused an apartment because of his race. First, the subject premises, containing approximately 60 apartments, already had seven or eight Negro tenants. Two of them testified at the hearing that they had not encountered any discrimination when they applied for apartments; and one of these witnesses had obtained his apartment only a few weeks before the complainant made application. Second, the testimony of the complainant and his wife that Hiltzik made remarks about Negro men running around with other men’s wives and about Southern treatment of the Negro is incredible. Hiltzik had been involved in four prior proceedings with the commission (all of which were resolved in his favor) and we cannot reasonably conclude that he would pass any racial slurs certain to invite another complaint. Third, Hiltzik contends that the complainant was denied the apartment for financial reasons—that during the interview the complainant was vague and indefinite about the nature of his income. The complainant’s testimony at the hearing as to his income is almost incomprehensible, even under the probing of an attorney, and thus strongly supports Hiltzik’s contention. Furthermore, taken alone, the execution of the lease on apartment 5K. with Mrs. Schmidt moments before the complainant applied for the same apartment and its cancellation at the time Mrs. Jacobson sought the apartment might well have been entirely fortui *974 tons. It is not necessarily incredible that Mrs. Schmidt arrived at the renting office first and got the apartment nor that she canceled the lease right after Mrs. Jacobson saw the apartment. The fact that the superintendent told Mrs. Jacobson the apartment was available before the lease had been formally canceled proves nothing. Hiltzik testified he did not call the superintendent to tell him the apartment was available again (on account of Mrs. Schmidt’s cancellation) until July 27, and even on that date the apartment was not available since it had been rented to Mrs. Jacobson on the 25th. Therefore, his confusing testimony as to the timing of his call is of little probative value. While the commission chose to construe it as indicating that the Schmidt lease was a sham and that the apartment was indeed available on the 24th, as Mrs. Jacobson had been told, his testimony is equally amenable to the construction that he simply forgot to call the superintendent on July 20 and tell him that the apartment had been rented to Mrs. Schmidt. Certainly, there is nothing in the evidence to refute this interpretation, much less substantial evidence to support á contrary finding. Lastly, we have the conflicting testimony of Mrs. Jacobson and Hiltzik as to whether he inquired about her husband’s salary when he spoke to her over the phone on July 25. She says he did not; he says he did. Hiltzik’s failure to specifically direct such an inquiry to Mrs. Jacobson, a white person, while at the same time requiring such inf ormation of the complainant, a Negro, might under appropriate circumstances signify an impermissible difference in treatment (cf. Matter of State Comm. for Human Rights v. Kennelly, 30 A D 2d 310, 312-13, affd. 23 N Y 2d 722). It is undisputed, however, that the complainant told Hiltzik that he held two jobs, one of which (and apparently the primary one) was at Shea Stadium. Since employment at Shea Stadium is obviously seasonal, Hiltzik was justified in directing further inquiries as to the exact nature of his employment and salary, with a view towards determining whether the rent would be paid every month. In Mrs.. Jacobson’s case, on the other hand, there was nothing in her statement as to her husband’s employment which should have alerted Hiltzik to any possible financial difficulties. Even if we credit Mrs. Jacobson’s denial that she was asked her husband’s salary, Hiltzik could reasonably infer from the information she did impart that they were a good risk and earned sufficient money to pay the rent. Thus, the differing degrees of scrutiny acecorded Mrs. Jacobson and the complainant do not support a finding of racial discrimination in the rental of the apartment at issue; and, taken as a whole, the record presents a sound and nondiseriminatory basis for Hiltzik’s failure to accept the complainant as a tenant&emdash;■ seasonal income and two jobs, neither of which was sufficient to cover the rent without the other.